UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE WALLACE,<br><br>Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, Individually and dba MR. COOPER, CENTEX HOME EQUITY, LLC, THE BANK OF NEW YORK MELLON, THE MORTGAGE LAW FIRM, and DOES 1-100, Inclusive,<br><br>Defendants. | No. 2:18-cv-02768-JAM-DB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper f/k/a Centex Home Equity Company LLC and The Bank of New York Mellon f/k/a The Bank of New York As Successor in Interest to JP Morgan Chase Bank, N. A. as Trustee for Centex Home Equity Loan Trust 2005-A's (collectively, "Defendants") Motion to Dismiss. Mot., ECF No. 16. Plaintiff Denise Wallace filed an opposition, Opp'n, ECF No. 20, to which Defendants replied, Reply, ECF No. 26. After considering the parties' briefing and relevant legal authority, the Court grants

in part and denies in part Defendants' Motion to Dismiss.[1]

## I. BACKGROUND

On December 26, 2003, Wallace purchased a home located at 8194 Treecrest Avenue, Fair Oaks, CA 95628 ("the Property"). First Am. Compl. ("FAC"), ECF No. 10 ¶ 12. She took out a loan with Centex Home Equity, LLC on or about August 31, 2004. Id. ¶ 13. The loan was subsequently transferred to The Bank of New York Mellon. Id.

On April 30, 2010, Wallace submitted a loan modification contract reflecting principal balance of $168,907.33, along with her promise to pay the unpaid principal balance plus interest at the rate of 3.25% per annum from May 1, 2010 until May 1, 2017 through monthly payments of principal and interest in the amount of $1,374.33, effective June 1, 2010. Id. ¶ 14. Wallace alleges that after the expiration of the fixed-rate period in May 2017, her rate would remain fixed at 3.25% for the remainder of the life of the loan and the full amount of the loan would be due and payable upon the original maturity date of September 1, 2034. Id. Should Wallace fail to make any payment in a timely fashion, or as specified in the loan modification document, then the modification agreement terminates and the terms of the note as originally executed become due and payable. Id. Wallace requested and received a copy of the Loan Modification Agreement in February 2011. Id. ¶ 17. Neither party has provided the Court with a copy of the Loan Modification Agreement.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 19, 2019.

2

In April 2018, Defendants refused to accept Wallace's payment. Id. ¶ 22. Defendants continued to refuse Wallace's payments each month thereafter. Id. Defendants issued a Notice of Default in May 2018. Id. ¶ 23.

## II. OPINION

### A. Requests for Judicial Notice

Defendants request that the Court take judicial notice of the four documents related to the foreclosure of the Property. RJN, ECF No. 16-2, pp. 1-3. All four documents are publicly recorded with the Sacramento County Recorder: an August 31, 2004 Deed of Trust for the Property (Exhibit A); an April 20, 2018 Corporate Assignment of Deed of Trust (Exhibit B); a May 23, 2018 Notice of Default and Election to Sell (Exhibit C); and a September 6, 2018 Notice of Trustee's Sale (Exhibit D). RJN, Exs. A-D. Plaintiff objects to Defendants' request for judicial notice, claiming it converts the motion to dismiss into a motion for summary judgment. Pl.'s Obj. to RJN, ECF No. 19-1, p. 1.

"Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion . . . it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." United States v. 14.02 Acres of Land, 547 F.3d 943, 955 (9th Cir. 2008) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)).

Federal courts apply the Federal Rules of Evidence and thus Defendants' reliance on state law is unpersuasive. See Primiano v. Cook, 598 F.3d 558, 563 (9th Cir. 2010), as amended (Apr. 27, 2010) (instructing that the Federal Rules of Evidence govern all

proceedings in the courts of the United States).  To take judicial notice of a fact, the fact must be either "generally known within the trial court's territorial jurisdiction" or able to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. While courts may take judicial notice of matters of public record, they may not take judicial notice of "disputed facts stated in public records."  See Lee, 250 F.3d at 690.

Here, Wallace referenced subjects contained within the documents Defendants seek to admit.  See FAC ¶¶ 13, 23-24. Thus, the Court will grant Defendants' request for judicial notice in part.  The Court notices the existence of the four documents and their recording with the Sacramento County Recorder.  The Court does not take judicial notice of any disputed facts in any of the documents.

    B.    Defendants' Motion to Dismiss

        1.    Count I: Breach of Contract

To state a claim for breach of contract, Wallace must include facts demonstrating (1) that a contract exists between her and Defendants; (2) that she performed her contractual duties or was excused from nonperformance; (3) that Defendants breached those contractual duties; and (4) that her damages were a result of the breach.  Walters v. Fid. Mortg. of CA, 730 F. Supp. 2d 1185, 1199 (E.D. Cal. 2010).  "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect."  McKell v. Washington Mut., Inc., 49 Cal. Rptr. 3d 227, 253 (Ct. App. 2006)

4

(citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 479, 480, pp. 572-73). To plead a contract by its legal effect, Wallace must "allege the substance of its relevant terms," which "is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." Id. (quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading § 480, p. 573).

Here, the Court finds that Wallace sufficiently alleged the existence of a contract. She alleges that the parties entered into the Loan Modification Agreement on or about April 30, 2010. See FAC ¶ 14. Her allegations include the unpaid principal balance ($168,907.33), the interest rate (3.25%), the monthly payment amount ($1,374.33), and the dates of the agreement (May 1, 2010 until May 1, 2017). Id. Wallace further alleges that her rate remained fixed at 3.25% after May 2017 and that she continued to tender timely payment of her mortgage under these terms until the present time. Id. ¶¶ 14, 22. The Court must accept all of Wallace's factual allegations as true at this stage in the proceedings, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and thus the Court must accept that these terms continued after May 1, 2017. Accordingly, the Court finds that Wallace sufficiently provided the terms of the contract for the purposes of this motion. See, e.g., Miles v. Deutsche Bank Nat'l Tr. Co., 186 Cal. Rptr. 3d 625, 631 (Ct. App. 2015) ("Accordingly, plaintiff's failure either to attach or to set out verbatim the terms of the contract was not fatal to his breach of contract cause of action.")

The Court is similarly unpersuaded by Defendants' arguments

that Wallace insufficiently pled facts illustrative of the required elements for breach of contract. California courts have found similar allegations are enough to survive a motion to dismiss. See, e.g., Miles, 186 Cal. Rptr. 3d at 631 (alleging a contract, performance under that agreement, a bank's refusal to accept payments under the agreement, and foreclosure from home were sufficient for breach of contract claim).

While Wallace's grouping of Defendants under a single label falls short of the desired level of diligence and specificity, it does not leave Defendants with no means to determine which individual defendants are responsible for each wrongful act. Defendants provided documents that specify the dates upon which interest in deed of trust changed hands between individual defendants and provide the identities of the defendants that filed the Notice of Default and Notice of Trustee's Sale. Wallace has given Defendants fair notice of her breach of contract claim and the grounds upon which it rests. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002).

Defendants' motion to dismiss Wallace's breach of contract claim is denied.

        2. Count II: Negligent Infliction of Emotional Distress

"[T]he negligent causing of emotional distress is not an independent tort but the tort of negligence," and as such, the "traditional elements of duty, breach of duty, causation, and damages apply." Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 770 P.2d 278, 281 (Cal. 1989). Thus, to properly plead a negligence claim, Wallace must allege some facts

6

support the argument that Defendants owed her a duty of care, which they breached, causing her harm.

"Lender-borrower relations do not normally give rise to a duty supporting a negligence cause of action." Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1173 (E.D. Cal. 2010) (listing cases). Some California appellate courts, however, have found that lenders may have a duty arising under the Biakanja factors. Daniels v. Select Portfolio Servicing, Inc., 201 Cal. Rptr. 3d 390, 419 (Ct. App. 2016) (citing Biakanja v. Irving, 320 P.2d 16, 19 (Cal. 1958)) (finding lenders may incur a legal duty of care where they allegedly agreed to consider modification of the borrower's loans); Alvarez v. BAC Home Loans Servicing, L.P., 176 Cal. Rptr. 3d 304, 310 (Ct. App. 2014) (same). "Federal district courts in California have also reached different results" on this issue. Rossetta v. CitiMortgage, Inc., 227 Cal. Rptr. 3d 598, 605 (Ct. App. 2017), reh'g denied (Jan. 4, 2018), review denied (Mar. 21, 2018).

Here, Wallace alleges that Defendants failed to honor her Loan Modification Agreement by rejecting her timely payments. In considering whether Defendants had a duty of care, based on the facts alleged, the Court considers the six Biakanja factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. Daniels, 201 Cal. Rptr. 3d at 418 (internal quotation

7

marks omitted).

With respect to the first factor, the parties intended that the Loan Modification Agreement affect Wallace. It contained a fixed interest rate, which allegedly survived the end date of the agreement, and conditions Wallace needed to follow to remain in her home under the new, lower rate. The Court finds that this factor weighs in favor of finding a duty of care. See Rossetta, 227 Cal. Rptr. 3d at 608.

As to the second factor, the potential harm to Wallace was readily foreseeable. By refusing Wallace's monthly payments and issuing the Notice of Default, it is foreseeable that Wallace would suffer adverse consequences, including harm to her credit score. The Court concludes the second factor weighs in favor of finding a duty of care.

With respect to the third factor, Wallace alleges she suffered injury in the form of damage to her credit, a foregone opportunity to refinance her home to pay off Defendants, and unspecified emotional and physical distress. These allegations sufficiently establish injury at this stage of the proceedings. See Rossetta, 227 Cal. Rptr. 3d at 608. The third factor weighs in favor of finding a duty of care.

As to the fourth factor, the allegations establish a close connection between Defendants' conduct and Wallace's injury. Construing the complaint liberally, the Notice of Default would not have issued had Defendants accepted Wallace's timely payments in accordance with the Loan Modification Agreement. The fourth factor weighs in favor of finding a duty of care.

The fifth factor looks to the "moral blame" attached to the

Defendants' alleged conduct. California courts have looked at whether the borrower was "captive, with no choice of servicer, little information, and virtually no bargaining power." Rosetta, 227 Cal. Rptr. 3d at 609 (quoting Alvarez, 176 Cal. Rptr. 3d at 311). According to the facts alleged by Wallace, Defendants wielded all the power in the situation and Wallace relied on their agreement to her detriment. This fifth factor also weighs in favor of finding a duty of care.

With the six and final factor, the Court looks to the policy of preventing future harm. Here, imposing a duty of care would further California's "strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." Alvarez, 176 Cal. Rptr. 3d at 311. Thus, the Court concludes that the sixth factor weighs in favor of finding a duty of care.

Here, under Wallace's specific factual allegations, the Court finds that a duty of care exists. Wallace's allegations further establish that she performed under her duties, but Defendants breached their duties by refusing payments under the Loan Modification Agreement and issuing the Notice of Default. Finally, Wallace's cursory allegations of emotional damages provide the minimal amount of notice necessary to survive the motion. Her First Amended Complaint mentions the anxiety, stress, and humiliation stemming from the fear that she will lose her home. This distress is traceable to Defendants' alleged conduct of declining payments and issuing the Notice of Default.

The Court denies Defendants' motion to dismiss Wallace's negligent infliction of emotional distress claim.

### 3. Count III: Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Doe v. Gangland Prods., Inc., 730 F.3d 946, 960 (9th Cir. 2013) (quoting Davidson v. City of Westminster, 649 P.2d 894, 901 (Cal. 1982)). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting Hughes v. Pair, 209 P.3d 963, 976 (Cal. 2009)). "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." Berkley v. Dowds, 61 Cal. Rptr. 3d 304, 317 (Ct. App. 2007).

While a lending party enforcing a foreclosure in good faith is not outrageous, Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010), Wallace has alleged Defendants breached the modification agreement in bad faith and lacked legal authority to foreclose. Where a plaintiff creates a triable issue of fact on whether the foreclosure was lawful, courts have allowed an intentional infliction of emotion distress

claim to proceed past a motion to dismiss. See, e.g., Ragland v. U.S. Bank Nat'l Assn., 147 Cal. Rptr. 3d 41, 60-61 (2012); Ryan-Beedy v. Bank of New York Mellon, 293 F. Supp. 3d 1101, 1116 (E.D. Cal. 2018). This Court finds these authorities to be instructive and denies Defendants' motion to dismiss Wallace's intentional infliction of emotion distress claim.

### 4. Count IV: Slander of Title

"The elements of slander of title are: (1) publication; (2) falsity; (3) absence of privilege; and (4) disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss." Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1122 (E.D. Cal. 2014) (citing Appel v. Burman, 206 Cal. Rptr. 259, 262 (Ct. App. 1984)).

"The recording of a notice of sale and notice of default are privileged." Schep v. Capital One, N.A., 220 Cal. Rptr. 3d 408, 412 (Ct. App. 2017), as modified on denial of reh'g (July 18, 2017), review denied (Oct. 11, 2017). Thus, a party may not assert a slander of title unless there is a showing of malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 547 (Ct. App. 2008) (internal quotation marks omitted). Accepting Wallace's allegations as true, Defendants may have "lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of [Wallace's] rights." Id. Accordingly, Defendants' motion to dismiss Wallace's slander of

1 | title claim is denied.

### 5. Count V: Declaratory Relief

Declaratory judgment is a remedy, not a theory of recovery. Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (quoting Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 775 (1st Cir. 1994)). It is only appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted). Declaratory relief operates prospectively, enabling parties to avoid a breach, rather than to address past wrongs. Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009). "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).

Because Wallace's other claims survive the motion to dismiss, her claim for declaratory relief will not be barred for lack of an underlying claim. Nevertheless, her declaratory relief claim is duplicative of the relief sought by her other claims. Accordingly, the Court finds that "dismissal of this claim at the pleading stage will serve the felicitous purpose of narrowing the action, by eliminating superfluous or unnecessary claims and concentrating the parties' (and the Court's) energies on the essence of the underlying dispute." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010).

Dismissal of this claim does not prejudice Wallace as the declaratory relief sought remains in the remedy section of her First Amended Complaint. See FAC at 11 ¶ 3.

Accordingly, the Court dismisses Wallace's declaratory relief claim with prejudice.

### C. Sanctions

The Court issued its Order re Filing Requirements ("Order") on October 15, 2018. ECF No. 3-2. The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in support of motions to dismiss to five pages. Id. at 1. The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit. Wallace's opposition memorandum exceeds the page limit by three pages. The Court has not considered any arguments made after page fifteen of the opposition brief.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss Wallace's fifth claim for declaratory relief with prejudice. The Court DENIES Defendants' Motion to Dismiss Wallace's remaining four claims.

Additionally, the Court ORDERS Wallace's counsel to pay $150.00 in sanctions. Sanctions shall be paid to the Clerk of the Court within five (5) days of the date of this Order.

IT IS SO ORDERED.

Dated: March 26, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

13