UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE WALLACE,<br><br>            Plaintiff,<br><br>      v.<br><br>NATIONSTAR MORTGAGE, LLC, individually and dba MR. COOPER, and DOES 1-100, inclusive,<br><br>            Defendants. | No. 2:18-cv-02768-JAM-DB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

   Denise Wallace ("Plaintiff") filed suit against Nationstar Mortgage, LLC, Centex Home Equity, LLC, The Bank of New York Mellon, and The Mortgage Law Firm ("Defendants") for breach of contract, negligent and intentional infliction of emotional distress, and slander of title and credit. See First Am. Compl. ("FAC"), ECF No. 10.  The parties filed cross-motions for summary judgment on August 18, 2020, and September 1, 2020, respectively. See Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 51; Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 58.  Each side has opposed the other, see Pl.'s Opp'n, ECF No. 60; Defs.' Opp'n, ECF No. 55, and
1

replied, see Pl.'s Reply, ECF No. 60; Defs.' Reply, ECF No. 61.

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.[1]

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On August 24, 2004, Plaintiff obtained a $330,215.50 loan from Centex Home Equity Company, LLC ("Centex") that was secured by her home located at 8194 Treecrest Avenue, Fair Oaks, California. Defs.' Resp. to Pl.'s Undisputed Facts ("Pl.'s SUF") ¶¶ 1–2, ECF No. 56; Defs.' Undisputed Facts ("Defs.' SUF") ¶ 1, ECF No. 58-2; FAC ¶ 12; Pl.'s Decl. ¶ 2, ECF No. 51-4. Nationstar Mortgage, LLC ("Nationstar") has serviced the loan since its inception. Pl.'s SUF ¶ 4; Defs.' SUF ¶ 3. Plaintiff fell behind on her loan payments soon after the loan originated. Defs.' SUF ¶ 4. As a result, Nationstar offered her a loan modification that was executed on August 27, 2008. Defs.' SUF ¶¶ 5–6. The 2008 loan modification stated that the unpaid principal balance of the loan was $344,706.29. Defs.' SUF ¶ 7.

Sometime in 2009 and 2010 (exactly when, and for what reason, is disputed), Plaintiff sought another loan modification from Nationstar. Pl.'s SUF ¶ 4; Defs.' SUF ¶¶ 8–12. On April 26, 2010, Nationstar sent Plaintiff a loan modification proposal. Pl.'s SUF ¶ 5; Defs.' SUF ¶ 13. The 2010 loan modification

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for September 29, 2020.

2

1   proposal contained, among other terms, a new unpaid principal
2   balance of $368,907.33 with a two-year fixed interest rate from
3   2010 to 2012.  Defs.' SUF ¶ 14.  On April 29, 2010, Plaintiff
4   made a counteroffer to Nationstar's loan modification proposal by
5   revising it.  Pl.'s SUF ¶ 7; Defs.' SUF ¶ 15.  Plaintiff changed
6   several material terms, including changing the unpaid principal
7   balance to $168,907.33 with a fixed interest rate from 2010
8   onward.  Defs.' SUF ¶ 15.
9      Nationstar denies having knowledge of the counteroffer in
10  April 2010.  Pl.'s SUF ¶ 7.  At the time Nationstar received
11  Plaintiff's counteroffer, it believed it was merely a copy of its
12  original loan modification proposal.  Defs.' SUF ¶ 16.
13  Accordingly, Nationstar implemented its original 2010 loan
14  modification in its record system, including an unpaid principal
15  of $368,907.33 and a two-year fixed interest rate.  Id.  At no
16  point in time did Nationstar send Plaintiff a mortgage loan
17  statement with her modified principal balance.  Defs.' SUF ¶ 19.
18  And Nationstar sent Plaintiff monthly mortgage loan statements
19  from 2010 onward.  Id.  However, Nationstar admits it received an
20  email from Plaintiff on April 30, 2010, asking whether the
21  revised loan modification proposal had been received.  Pl.'s SUF
22  ¶ 9.  Daniel Gallegos, one of Nationstar's foreclosure prevention
23  specialists replied to Plaintiff and acknowledged receipt.  Id.
24      Plaintiff claims that she made her first payment pursuant to
25  the revised loan modification proposal, which she considered the
26  operative agreement, on June 1, 2010.  Pl.'s SUF ¶ 11.
27  Nationstar denied any payment was made pursuant to that revised
28  proposal.  Id.  On March 5, 2012, Plaintiff received a letter

from Nationstar informing her that the interest rate on her loan would change from 3.250% to 7.000% on June 1, 2012.  Pl.'s SUF ¶ 14; Defs.' SUF ¶ 20.  This increase was contrary to Plaintiff's revision of the loan modification proposal but was in line with Nationstar's 2010 loan modification.  <u>See</u> Pl.'s SUF ¶ 14; Defs.' SUF ¶ 14.  Nationstar denies ever accepting payment from Plaintiff pursuant to the revised loan modification proposal. Defs.' SUF ¶ 27.  Any payments it received were pursuant to the terms of the original 2010 loan modification.  <u>Id.</u>

Plaintiff filed the instant lawsuit in Sacramento County Superior Court on August 28, 2018.  <u>See</u> Compl., ECF No. 1-1. Defendants removed the case to federal court on October 15, 2018. <u>See</u> Notice of Removal, ECF No. 1.  Plaintiff filed the First Amended Complaint on November 8, 2018.  <u>See</u> FAC, ECF No. 10. Plaintiff's fifth cause of action for declaratory relief was dismissed with prejudice on March 27, 2019.  <u>See</u> Order, ECF No. 22.  Plaintiff now seeks summary judgment on her first cause of action and Defendants' two counterclaims against her.  <u>See generally</u> Pl.'s Mot.  Defendants seek summary judgment on all four of Plaintiff's remaining causes of action against them and their two counterclaims against her.  <u>See generally</u> Defs.' Mot.

## II. OPINION

### A. Evidentiary Objections

Plaintiff raised several objections to Defendants' evidence in opposition to Defendants' motion.  <u>See</u> Pl.'s Obj. to Def.'s Evid., ECF No. 60-2; <u>see also</u> Pl.'s Resp. to Defs.' Disputed Facts, ECF No. 60-3.  Defendants responded to these objections.

4

1  See Defs.' Response to Pl.'s Obj., ECF No. 61-1.  The Court has
2  reviewed these evidentiary objections but declines to rule on
3  each individual objection as courts self-police evidentiary
4  issues on motions for summary judgment and a formal ruling is
5  unnecessary to the determination of this motion.  See Burch v.
6  Regents of the University of California, 433 F.Supp.2d 1110,
7  1118–1122 (E.D. Cal. 2006) (objections challenging the
8  characterization of the evidence are improper on a motion for
9  summary judgment).

10       B.   Judicial Notice

11       Plaintiff requests that the Court take judicial notice of
12  Defendants' Answer and Affirmative Defenses to her First Amended
13  Complaint and Defendants' Counterclaims at ECF No. 25.  Request
14  for Judicial Notice ("RJC"), ECF No. 51-2.  Defendants do not
15  oppose this request.  Rule 201 of the Federal Rules of Evidence
16  allows a court to take judicial notice of an adjudicative fact
17  that is "not subject to reasonable dispute," because it (1) "is
18  generally known within the trial court's territorial
19  jurisdiction"; or (2) "can be accurately and readily determined
20  from sources whose accuracy cannot reasonably be questioned."
21  Fed. R. Evid. 201(a)-(b).

22       Thus, a court may take judicial notice of "undisputed
23  matters of public record . . .  including documents on file in
24  federal or state courts."  Harris v. County of Orange, 682 F.3d
25  1126, 1132 (9th Cir. 2012).  The Court finds Plaintiff's request
26  to judicially notice a pleading on the docket in the very same
27  action unnecessary.  Therefore, Plaintiff's request for judicial
28  notice is denied.

Defendants, for their part, request this court to take judicial notice of the deed of trust executed by plaintiff on August 24, 2004 and plaintiff's first amended complaint filed in this action. ECF No. 58-5. Defendants' request for judicial notice as to the first amended complaint is unnecessary and therefore denied. Defendant's request for judicial notice as to the deed of trust is granted.

### C. Legal Standard

A Court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying [the documents] which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant makes this initial showing, the burden rests upon the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Id. An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

### D. Analysis

#### 1. Breach of Contract

Both Plaintiff and Defendants seek summary judgment on Plaintiff's first cause of action for breach of contract.

6

1  Plaintiff argues that the operative contract between Plaintiff
2  and Defendants was the 2010 loan modification that was revised
3  by Plaintiff and that Defendants breached that contract by
4  noticing default and attempting to foreclose on Plaintiff's
5  home.  Pl.'s Mot. at 7-9.  Defendants argue the statute of
6  limitations for breach of contract in California bars
7  Plaintiff's claim; the 2010 loan modification revised by
8  Plaintiff was not the operative contract; and the claim is also
9  barred by the statute of frauds.  Defs.' Mot. at 6-13.
10     The statute of limitations for breach of a written contract
11 in California is four years.  See Cal. Civ. Proc. Code § 337(1);
12 see also Krieger v. Nick Alexander Imports, Inc., 234 Cal.App.3d
13 205, 220-21 (1991).  A cause of action for breach of contract
14 accrues at the time of the breach, and the statute of
15 limitations begins to run at that time regardless of whether any
16 damage is apparent or whether the injured party is aware of his
17 right to sue.  Perez-Encinas v. AmerUs Life Ins. Co., 468
18 F.Supp.2d 1127, 1134 (N.D. Cal. 2006) (citations omitted).
19     Plaintiff learned of Defendants' alleged breach of contract
20 as early as May 11, 2010, when Nationstar sent her first monthly
21 mortgage loan statement.  See Loan Statements at 30, Ex. 6 to
22 Nationstar Decl., ECF No. 58-4.  The statement sets Plaintiff's
23 principal loan balance at $368,907.33, not at $168,907.33, as
24 Plaintiff alleges it should have been.  Id.  Nationstar sent
25 Plaintiff monthly loan statements reflecting the higher
26 principal amount each month for every month after May 2010.
27 Defs.' SUF ¶ 19.  Moreover, Plaintiff acknowledged the alleged
28 breach of contract on June 1, 2012, when she sent a letter to

1  Nationstar disputing that the increased interest rate complied
2  with the terms of the loan modification agreement.  See Pl.'s
3  June 1, 2012, Letter at 35, Ex. 8 to Nationstar Decl., ECF No.
4  58-4.  Thus, Plaintiff knew of Nationstar's purported breach as
5  far back as May 11, 2010, and, as a result, the statute of
6  limitations has long since run.
7   Plaintiff not only relies on her June 1, 2012, letter to
8  Nationstar in support of her own motion for summary judgment,
9  see Pl.'s Decl. ¶ 15, ECF No. 51-4; June 1, 2012, Letter, Ex. C
10 to Pl.'s Mot. at 19, ECF No. 51-4, but she does not dispute that
11 the statute of limitations has run in her opposition to
12 Defendants' motion, see Pl.'s Opp'n at 2-4.  Therefore,
13 Plaintiff has conceded this point by silence.  See Ardente, Inc.
14 v. Shanley, Case No. 07-CV-4479-MHP, 2010 WL 546485 at *6 (N.D.
15 Cal. 2010) ("Plaintiff fails to respond to this argument and
16 therefore concedes it through silence."); see also E.D. Cal.
17 L.R. 230(c).  Plaintiff failed to bring her claim for breach of
18 contract within the requisite time period and the claim is,
19 therefore, time barred.
20  Accordingly, the Court grants summary judgment in favor of
21 Defendants and against Plaintiff on Plaintiff's first cause of
22 action for breach of contract.
23          2.   Emotional Distress
24  Defendants seek summary judgment on Plaintiff's second and
25 third causes of action for negligent and intentional infliction
26 of emotional distress.  They argue that emotional distress
27 damages are not available; the two-year statute of limitations
28 has run; and Defendants' conduct does not satisfy the elements

of either a negligent or intentional infliction of emotional distress claim. Defs.' Mot. at 14-20. Negligent infliction of emotional distress "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." Huggins v. Longs Drugs Store Cal., Inc., 6 Cal.4th 124, 129 (1993). A plaintiff must show "serious emotional distress actually and proximately caused by wrongful conduct on the part of a defendant who should have foreseen that the conduct would cause such distress." Davenport v. Litton Loan Servicing, LP, 725 F.Supp.2d 862, 884 (N.D. Cal. 2010) (citation omitted).

In order to plead a claim of intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by defendants; (2) intent to cause, or a reckless disregard of the probability of causing, emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of emotional distress by defendants' outrageous conduct. Fletcher v. Western Nat'l Life Ins. Co., 10 Cal.App.3d 376, 394 (1970).

Plaintiff's emotional distress claims are based solely on Defendants' allegedly wrongful foreclosure proceedings, stemming from Defendants' alleged breach of her revised loan modification agreement. See FAC ¶¶ 30-37 ("Defendants . . . owed a duty to exercise due care toward Plaintiff by way of their relationship vis-à-vis the loan and modification thereto."). Defendants commenced foreclosure proceedings in April 2018. Nationstar Decl. ¶ 36, ECF No. 58-4. However, emotional distress claims are generally not available where the alleged wrongdoing results

only in economic injury to the plaintiff, particularly when the economic injury merely arises from a breach of contract. Averbach v. Vnescheconombank, 280 F.Supp.2d 945, 960 (N.D. Cal. 2003) (citing Erlich v. Menezes, 21 Cal.4th 543, 555 (1999)) ("No California case has allowed recovery for emotional distress arising solely out of property damage; moreover, a pre-existing contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff.").

Thus, even assuming Plaintiff's revised 2010 loan modification agreement was the operative contract, and that Defendants breached that contract in modifying the interest rates and seeking to foreclose on Plaintiff's property, Plaintiff cannot maintain an emotional distress claim under California law. Only a claim sounding in contract law is appropriate here. Erlich, 21 Cal.4th at 552 ("Courts will generally enforce the breach of a contractual promise through contract law . . . .") (internal quotation marks and citation omitted). And, as previously explained, Plaintiff's breach of contract claim is barred by the statute of limitations.

Accordingly, the Court grants summary judgment in favor of Defendants and against Plaintiff on Plaintiff's second and third causes of action for negligent infliction of emotional distress and intentional infliction of emotional distress.

3. Slander of Title and Credit

Defendants seek summary judgment on Plaintiff's fourth cause of action for slander of title and credit. Defendants

1  argue they did not slander Plaintiff's title because the
2  publication of the foreclosure documents is privileged, there is
3  nothing false about the foreclosure documents, and Plaintiff
4  cannot establish the necessary kind of pecuniary loss.  Defs.'
5  Mot. at 20-21.  Defendants also argue Plaintiff's slander of
6  credit claim fails because it is preempted by the Federal Credit
7  Reporting Act ("FCRA").  Id. at 21.
8      Slander of title is an unprivileged or malicious
9  publication of a false statement that disparages a plaintiff's
10 title to real property and causes pecuniary damage to the
11 property's owner.  Howard v. Schaniel, 113 Cal.App.3d 256, 262–
12 63 (1980).  To establish slander of title, there must be: (1) a
13 publication; (2) which is without privilege or justification and
14 thus with malice, express or implied; (3) is false, either
15 knowingly so or made without regard to its truthfulness; and
16 (4) causes direct and immediate pecuniary loss.  Id. at 263-64.
17     However, the recording of a notice of default and trustee
18 sale are privileged acts, upon which no tort claim, other than
19 malicious prosecution, may be based.  See Cal. Civ. Code
20 § 2924(d)(1) ("[t]he mailing, publication, and delivery of
21 notices as required by this section" shall constitute privileged
22 communications pursuant to Section 47); see also Kachlon v.
23 Markowitz, 168 Cal.App.4th 316, 333 (2008) ("We hold that
24 section 2924 deems the statutorily required mailing,
25 publication, and delivery of notices in  nonjudicial
26 foreclosure, and the performance of statutory nonjudicial
27 foreclosure procedures, to be privileged communications under
28 the qualified common-interest privilege of section 47,

1  subdivision (c)(1).").

2  In Kachlon, one of the plaintiffs alleged a slander of
3  title claim against the foreclosure and lien services company.
4  168 Cal.App.4th at 329.  There, the foreclosure company was
5  substituted in as trustee and was provided with, and relied
6  upon, inaccurate and disputed evidence when it recorded the
7  notice of default and commenced the nonjudicial foreclosure
8  proceedings.  Id. at 328-29.  The foreclosure company's
9  liability depended on whether recording the notice of default
10 and its decision not to rescind the notice were wrongful.  Id.
11 at 333.  The court held that, notwithstanding the foreclosure
12 company's reliance on inaccurate information, its recording of
13 the notice of default—a notice required by § 2924—was privileged
14 communication under the qualified common-interest privilege of
15 § 47(c)(1).  Id. at 343.

16 Here, too, the notice of default and notice of sale were
17 statutorily required by § 2924 and, thus, are privileged under
18 § 47(c)(1).  As in Kachlon, even if the Court assumes that
19 Defendants relied on the incorrect loan modification agreement
20 such that notice of default should not have been given, the
21 recording of a notice of default is nonetheless a privileged
22 act, upon which a claim for slander of title cannot be based.

23 Moreover, the evidence fails to show that Defendants acted
24 with malice.  "Mere negligence in making a sufficient inquiry
25 into the facts on which the statement was based does not, of
26 itself, relinquish the privilege.  Mere inadvertence or
27 forgetfulness, or careless blundering, is no evidence of
28 malice."  Kachlon, 168 Cal.App.4th at 344 (internal quotation

marks and citation omitted).  To constitute malice, the negligence must be so significant to evidence "a wanton and reckless disregard of the consequences and of the rights and of the feelings of others."  Id.

Nationstar can best be described as negligent in failing to recognize that Plaintiff sent it a revised version of its loan modification proposal.  No evidence suggests it acted with ill will or with reckless disregard for the truth of the notice of default.  Before recording the notice of default, Nationstar had mailed Plaintiff loan statements reflecting the higher principal every month from May 2010 onward.  Defs.' SUF ¶ 19.  It was clearly under the impression that its original loan modification agreement was in effect.  Its business records confirm as much. See Exs. 7, 10, 11 to Nationstar Decl., ECF No. 58-4.  Nothing suggests Nationstar acted with malice.  Having reached this conclusion, it is not necessary to address the other elements of the tort as applied to this case.  See Howard, 113 Cal.App.3d at 265.  Defendants are entitled to be relieved of liability for Plaintiff's slander of title claim.

Finally, to the extent Plaintiff's slander of credit claim is based on credit reporting, it is preempted by the FCRA.  See Townsend v. Chase Bank USA N.A., 2009 WL 426393 at *3-4 (C.D. Cal. 2009) ("The FCRA thus preempts all matters regulated by Section 1681s-2(a), which broadly states the various duties of furnishers of credit information to provide accurate information to credit reporting agencies.").  "Federal courts in California have consistently held that the FCRA preempts both statutory and common law claims under state law against furnishers of

1  information for failing to properly investigate and report
2  allegedly erroneous information." Id.
3      Accordingly, the Court grants summary judgment in favor of
4  Defendants and against Plaintiff on Plaintiff's fourth cause of
5  action for slander of title and credit.
6              4.   Fraud Counterclaim
7      Plaintiff seeks summary judgment on Defendants' first
8  counterclaim alleging she committed fraud by surreptitiously
9  altering the loan modification agreement. See Answer and
10 Counterclaim ¶¶ 39-44, ECF No. 25.  Plaintiff argues Defendants
11 cannot establish fraud because there was no misrepresentation.
12 Pl.'s Mot. at 9-11.  "Fraud is an intentional tort, the elements
13 of which are (1) misrepresentation; (2) knowledge of falsity;
14 (3) intent to defraud, i.e., to induce reliance; (4) justifiable
15 reliance; and (5) resulting damage." Conrad v. Bank of America,
16 45 Cal.App.4th 133, 155 (1996).  To establish a fraud claim, all
17 elements of the claim must be plead and proven in full,
18 factually and specifically. Id.
19     The Court agrees with Plaintiff that Defendants have failed
20 to establish misrepresentation.  While Plaintiff's revised loan
21 modification agreement was not covered in red ink, she did fax
22 it over to Nationstar with a coversheet with the subject line,
23 "Revised Loan Modification." See Revised Loan Modification, Ex.
24 A to Pl.'s Mot., ECF No. 51-4 (emphasis added).  That Nationstar
25 failed to notice the subject of the fax, or other alterations to
26 the loan modification indicating it had been revised, does not
27 mean that Plaintiff intentionally concealed her changes to the
28 original loan modification proposal.  Absent any evidence to

14

support misrepresentation, Defendants' fraud counterclaim necessarily fails. Wilhelm v. Pray, Price, Williams & Russell, 186 Cal.App.3d 1324, 1332 (1986) ("The absence of any one of these required elements will preclude recovery.").

Accordingly, the Court grants summary judgment in favor of Plaintiff and against Defendants on Defendants' first counterclaim for fraud.

### 5. Unjust Enrichment Counterclaim

Plaintiff also seeks summary judgment on Defendants' second counterclaim for unjust enrichment. Plaintiff argues that she was not unjustly enriched because she did not receive a benefit that was unfairly obtained at Nationstar's expense. Pl.'s Mot. at 12-14. Defendants claim Plaintiff was unjustly enriched "by altering the terms of the [loan modification agreement] and not bringing such material alterations to Defendants' attention in a timely manner, [she] received a benefit at the expense of Defendants." See Answer and Counterclaim ¶ 46.

Under California law, "the elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another." Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014). "This equitable test does not turn merely on the transfer of money or other benefits from one party to another—it requires injustice." Id. (citing Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 684 (9th Cir. 2009). As explained above, Plaintiff did point out that she revised Defendants' loan modification proposal. Her failure to make her revisions sufficiently obvious does not give the Court grounds to find she intended to deceive Defendants. Contra Lectrodryer v. SeoulBank,

77 Cal.App.4th 723, 726-27 (2000) (where the court found ample evidence that an exporter of industrial equipment obtained a letter of credit from a bank to pay the plaintiff but the bank refused to do so even though the letter of credit was intended to be pre-paid). Any benefit she received from Nationstar's failure to carefully read what she faxed back to them can hardly be characterizes as "injustice."

Accordingly, the Court grants summary judgment in favor of Plaintiff and against Defendants on Defendants' second counterclaim for unjust enrichment.

### III. ORDER

For the reasons set forth above:

(1) Plaintiff's Motion for Summary Judgment on her First, Cause of Action is DENIED.

(2) Plaintiff's Motion for Summary Judgment on Defendants' First and Second Counterclaims is GRANTED.

(3) Defendants' Motion for Summary Judgment on Plaintiff's First, Second, Third, and Fourth Causes of Action is GRANTED; and

(4) Defendants' Motion for Summary Judgment on their First and Second Counterclaims is DENIED.

The Clerk of the Court is ordered to close the case.

IT IS SO ORDERED.

Dated: December 7, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

16